IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Nationwide Mutual Fire Insurance Company, | ) | C/A No. 3:12-1759-MBS |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **ORDER AND OPINION** |
| | ) | |
| Trentcina Jeter and Carla M. Coulter, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

On June 26, 2012, Nationwide Mutual Fire Insurance Company ("Nationwide") filed a complaint against Trentcina Jeter ("Jeter") and Carla M. Coulter ("Coulter"), seeking a declaration that the tort claims in an underlying lawsuit in state court do not give rise to a duty to indemnify under an automobile insurance policy. ECF No. 1. On September 12, 2012, Coulter filed an answer and a counterclaim seeking a declaration to the contrary. ECF No. 8. Jeter failed to file an answer, and on September 19, 2012, Nationwide requested entry of default, which the clerk's office entered. ECF Nos. 11 & 14. Coulter and Nationwide filed cross-motions for summary judgment. ECF Nos. 26 & 27. On June 6, 2013, the court held a hearing and, following oral argument, granted Nationwide's motion for summary judgment and denied Coulter's motion for summary judgment. The court issues this written order to supplement that ruling.

## I. RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

The following facts are based on Jeter's and Coulter's deposition testimonies from the underlying lawsuit. Their testimonies are materially consistent, and the parties do not dispute the facts.

In February 2012, Coulter, who is unable to drive due to a health condition, hired Jeter as a "personal assistant." ECF No. 26-1 at 4 & 8. On February 14, 2012, Jeter used her vehicle to drive Coulter to a job interview at Synergy Home Care ("Synergy"), located on Harmon Street in Lexington, South Carolina. ECF No. 26-1 at 11. After the interview had ended, as the women were leaving the Synergy building, a dispute ensued between them. ECF No. 26-1 at 15. The dispute continued inside the vehicle, as Jeter reversed her vehicle out of the Synergy building parking lot, and drove the short distance towards the intersection of Harmon and East Main Street. ECF No. 26-1 at 15-16; ECF No. 26-4 at 19-20. As the vehicle approached the intersection, Jeter removed a can of pepper spray attached to her key chain and deployed it in Coulter's direction, making contact with Coulter's face. ECF No. 26-4 at 13; ECF No. 26-1 at 19-20. When the vehicle reached the intersection, Coulter exited. ECF No. 26-1 at 36-37; ECF No. 26-4 at 20. Jeter deployed pepper spray from the driver's side window of the vehicle as Coulter walked away, but none of the spray contacted her. ECF No. 26-1 at 23-24.

After Coulter had distanced herself from the vehicle, Jeter made a right turn on to East Main Street, entered a parking lot to turn her vehicle back in the direction of Harmon Street, and returned to the parking lot of the Synergy building. ECF No. 26-4 at 14. There, Jeter exited her vehicle to confront Coulter and, again, deployed pepper spray in Coulter's direction, this time making contact. *Id.* at 14-15. Thereafter, Jeter left the scene in her vehicle. ECF No. 26-1 at 17. Coulter dialed 9-1-1, and police officers and EMS arrived at the scene. In the days that followed, Jeter sought treatment for her eyes at several healthcare facilities, and doctors prescribed her medication. ECF No. 26-1 at 28-32, 37.

Nationwide issued a policy that provided liability insurance coverage for Jeter's vehicle, which policy was in effect on February 14, 2012. ECF Nos. 26-6 at 4. The policy states that, "[Nationwide] will pay for damages for which [the insured] [is] legally liable as a result of an accident arising out of the: a) ownership; b) maintenance or use; or c) loading or unloading" of the insured's vehicle. ECF No. 26-6 at 11-13.

## II. STANDARD OF REVIEW

**A.  *Summary Judgment***

The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). The party seeking summary judgment bears the burden of initially coming forward and demonstrating an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party then must affirmatively demonstrate that there exists a genuine issue of material fact requiring trial. *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 250 (1986).

**B.  *Insurance Coverage and the Duty to Indemnify***

According to South Carolina law, a liability insurer's duty to indemnify is based on evidence found by the fact finder. *Ellett Bros., Inc. v. U.S. Fid. & Guar. Co.*, 275 F.3d 384, 388-89 (4th Cir. 2001) (citing *Jourdan v. Boggs/Vaughn Contracting, Inc.*, 476 S.E.2d 708 (S.C. Ct. App. 1996)).[1]

---

[1] By contrast, whether an insurer has a duty to defend is determined based on the allegations in the complaint from the underlying lawsuit. *City of Hartsville v. S.C. Mun. Ins. & Risk Fin. Fund*, 677 S.E.2d 574 (S.C. 2009).

3

### III. DISCUSSION

The sole issue before the court is whether Coulter's injuries arose out of the ownership, maintenance, or use of Jeter's vehicle.

As an initial matter, the parties appear to agree that the record contains evidence of three separate instances in which Jeter assaulted Coulter: the first occurred inside the vehicle as it approached the intersection of Harmon and East Main Street (the "First Assault"); the second occurred after Coulter had exited the vehicle but while Jeter remained inside the vehicle (the "Second Assault"); and the third occurred in the Synergy building parking lot, after both Jeter and Coulter had exited the vehicle (the "Third Assault"). The court will separately analyze whether each assault produced injuries that arose from the ownership, maintenance, or use of Jeter's vehicle.

South Carolina courts have devised a three-part test to determine whether injuries arise out of the "ownership, maintenance, or use" of a vehicle: (1) there must be a causal connection between the vehicle and the injury; (2) no independent act breaks the causal link; and (3) the vehicle is being used for transportation at the time of the injury. *State Farm Fire & Cas. Co. v. Aytes*, 503 S.E.2d 744, 745 (S.C. 1998). The first element of the *Aytes* test requires a causal connection to exist between the vehicle and the injury. "In this context, causal connection means: (a) the vehicle was an 'active accessory' to the assault; and (b) something less than proximate cause but more than mere site of the injury; and (c) that the 'injury must be foreseeably identifiable with the normal use of automobile.' " *State Farm Mut. Ins. Co. v. Bookert*, 523 S.E.2d 181, 182 (S.C. 1999) (quoting *Aytes*); *see Peagler v. USAA Ins. Co.*, 411 F.3d 469, 472 (4th Cir. 2005). "The required causal connection does not exist when the only connection between an injury and the insured vehicle's use

4

is that fact that the injured person was an occupant of the vehicle when the [injury] occurred." *Aytes*, 503 S.E.2d at 745-46.

**1.** *First Assault*

Nationwide maintains that, with respect to the first assault, a causal connection does not exist between Jeter's use of her vehicle and Coulter's injuries. Nationwide argues that the vehicle was not an active accessory to the assault but merely its location. To the contrary, Coulter argues that a causal connection exists by virtue of the fact that the close confines of the vehicle coupled with its movement prevented her escape and enabled Jeter to harm her.

For support, Coulter relies on *Wausau Underwriters Insurance Co. v. Howser*, 422 S.E.2d 106 (S.C. 1992), and *Home Insurance Co. v. Towe*, 441 S.E.2d 825 (S.C. 1994). In *Howser*, the South Carolina Supreme Court found that a causal connection existed between the injuries sustained by the victim and the assailant's use of his vehicle. 422 S.E.2d at 107. In the course of a high-speed pursuit, the assailant bumped the victim's vehicle, pulled alongside it, and fired a gun in its direction, wounding the victim. *Id.* The court distinguished the case from those in which the vehicle was only used to provide transportation to the site of the assault, or in which the assailant happened to be sitting in a stationary vehicle at the time of the assault. *Id.* at 108 (citing *Nationwide Mut. Ins. Co. v. Brown*, 779 F.2d 984 (4th Cir. 1985)). The court held that the vehicle was an "active accessory to [the] assault," reasoning that "[o]nly through use of his vehicle was the assailant able to closely pursue [the victim], thereby enabling him to carry out the pistol assault. The gunshot was the culmination of an ongoing assault, in which the vehicle played an essential and integral part." *Id.*

In *Towe*, the South Carolina Supreme Court held that injuries sustained by a tractor driver were causally connected to the use of a passing vehicle. 441 S.E.2d at 826. In *Towe*, a passenger

5

in a moving vehicle threw a glass bottle out the window, attempting to hit a road sign but, instead, seriously injuring a tractor driver who was traveling down the road in the opposite direction. *Id.* The court explained, "[t]he use of the automobile placed [the passenger] in the position to throw the bottle at the sign and the vehicle's speed contributed to the velocity of the bottle increasing the seriousness of the . . . injuries[,]" thus determining that the vehicle served as an active accessory that gave rise to the injuries. *Id.* at 827.

Although *Howser* and *Towe* are pertinent to the analysis of whether Jeter's vehicle was merely the site of, or an active accessary to the assault, those cases' relevance is limited due to the fact that both were decided before *Aytes*. Significantly, *Aytes* added to the causal connection analysis the requirement that the "injury must be foreseeably identifiable with the normal use of the automobile." Although prior to *Aytes* a few courts had acknowledged that such a requirement might be relevant to the causation analysis, *see, e.g.*, *Nationwide Mut. Ins. Co. v. Brown*, 779 F.2d 984 (4th Cir. 1985); *Hite v. Hartford Accident and Indem. Co.*, 344 S.E.2d 173 (S.C. Ct. App. 1986), the South Carolina Supreme Court did not consider the foreseeability of the victims' injuries in *Howser* or *Towe*.

For guidance post-*Aytes*, the court turns to *State Farm Mutual Automobile Insurance Co. v. Bookert*, 523 S.E.2d 181 (S.C. 1999), upon which Nationwide relies. In *Bookert*, the South Carolina Supreme Court analyzed whether a pedestrian, shot and wounded by a gunman riding in a vehicle, sustained injuries covered by an automobile insurance policy. *Id.* at 181-82. The court of appeals' decision relied on *Howser* and *Towe* to find that the vehicle was an active accessory to the assault, causally connected with the victim's injuries. *State Farm Mut. Auto. Ins. Co. v. Bookert*, 499 S.E.2d 480, 486 (S.C. Ct. App. 1997). The court of appeals reasoned that the vehicle was the "launching

pad" for the assault and the assailant's means of escape. *Id.* After granting certiorari to review that decision, the supreme court decided *Aytes*. The supreme court reversed the court of appeals, holding that the pedestrian's injuries were not foreseeably identifiable with the normal use of a vehicle. 526 S.E.2d at 182 (citing *Aytes*).

Nationwide also relies on *Wright v. North Area Taxi, Inc.*, 523 S.E.2d 472 (S.C. Ct. 1999), a case the South Carolina Court of Appeals decided after *Aytes*. *Wright* involved two assailants who, while riding as passengers in a taxi, attempted to rob the driver. *Id.* at 473. The driver was shot during the incident, causing her to lose control of the vehicle and crash into a parked car. *Id.* The driver died from her injuries. *Id.* The court of appeals held that there was no causal connection between the driver's injuries and the vehicle because "the vehicle served merely as the situs of shooting[,]" as opposed to an instrumentality that furthered the cause of the assailants. *Id.* at 475. The court observed that "the same injuries could have occurred when the vehicle was parked, or otherwise not moving, or when [the driver] and [the assailants] were standing outside the vehicle." *Id.* at 476. In addition, the court held that the injuries the driver sustained were not foreseeably identifiable with the normal use of a vehicle. *Id.* at 475-76.

Coulter's reliance on *Howser* and *Towe* is unavailing. In those cases, the at-fault parties harnessed the speed and force of their vehicles and caused injuries that would have been difficult to inflict otherwise. Neither case involved an assault that occurred within a moving vehicle. In this regard, *Wright* is more apt. In *Wright*, the court rejected the argument that the moving vehicle was "essential" to accomplishing the passengers' criminal objective. *Id.* at 476. Likewise, in this case, the court does not find that the moving vehicle was essential to accomplishing the assault, as Jeter easily could have deployed pepper spray against Coulter when the vehicle was motionless, or while

the women were standing outside the vehicle. Indeed, Coulter accomplished the Third Assault after both women had exited the vehicle.

With respect to Jeter's argument that the inescapable nature of a moving vehicle could be the basis for finding that a vehicle served as an active accessory to an assault, the court is unpersuaded. Safe escape from a moving vehicle is rarely feasible, and the narrow confines of a vehicle make it especially difficult for a potential victim to avoid any sort of sudden attack. To find a causal connection based on the facts here would, in effect, carve out for moving vehicles an exception to the general limitation that coverage does not lie when a vehicle is merely the site of an injury. As such, the court finds that Jeter's vehicle was merely the site of, and not an active accessory to the First Assault.

Even if the court were to find that Jeter's vehicle was more than merely the site of the assault, under *Bookert*, Coulter's injuries are not foreseeably identifiable with the normal use of a vehicle. Coulter argues that *Bookert* is distinguishable because the assailant in that case intended to use the vehicle in an abnormal manner—to carry out a drive-by shooting—whereas Jeter assault's was a spontaneous act, during what was an otherwise normal use of a vehicle. This is not a meaningful distinction because the test is not whether the vehicle was being used in a foreseeable or normal manner at the time of the injuries, but whether the injuries are foreseeable with the normal use of a vehicle. Injuries sustained during a pepper spray attack are no more foreseeable than the injuries sustained by the shooting victims in *Bookert* and *Wright*.

For those reasons, the court finds that there is no causal connection between the injuries Coulter sustained and Jeter's use of her vehicle. Rather, Jeter's assault was an act of independent significance that incidentally occurred within a vehicle. To the extent Jeter's liability in the

8

underlying lawsuit stems from the First Assault, that liability did not arise from the ownership, maintenance, or use of a vehicle.

2. *Second Assault*

Nationwide argues that a causal connection does not exist between the injuries Coulter sustained during the Second Assault and Jeter's vehicle. By Coulter's own admission, Jeter's second attempt to spray her with pepper spray was unsuccessful. Even if the pepper spray had contacted Coulter, Jeter's position within the stationary vehicle was merely the location from which she carried out the assault. Moreover, for the reasons provided above, had Coulter sustained injuries, those injuries would not be the type foreseeably identifiable with the normal use of a vehicle. To the extent Jeter's liability in the underlying lawsuit stems from the Second Assault, that liability did not arise from the ownership, maintenance, or use of a vehicle.

3. *Third Assault*

Nationwide argues that a causal connection does not exist between the injuries Coulter sustained during the Third Assault and Jeter's vehicle. The Third Assault occurred in a parking lot, after both women had exited Jeter's vehicle. Once Jeter exited the vehicle, any causal connection that might have existed was broken. *See Carraway v. Smith by S.C. Ins. Co.*, 467 S.E.2d 120, 121 (S.C. Ct. App. 1995). Although Jeter used the vehicle to return to the parking lot, the use of a vehicle solely as a means of transportation to the location of where an assault takes place does not trigger coverage under an automobile insurance policy. *See Nationwide Mut. Ins. Co. v. Brown*, 779 F.2d 984, 989 (4th Cir. 1985). The court finds that these facts do not establish a causal connection, rather they show that the assault was an act of independent significance. To the extent Jeter's

liability in the underlying lawsuit stems from the Third Assault, that liability did not arise from the ownership, maintenance, or use of a vehicle.

Because none of the three assaults resulted in injuries that arose from the ownership, maintenance, or use of the vehicle, Nationwide's insurance policy does not require it to indemnify Jeter in the underlying lawsuit.

## IV. CONCLUSION

For the foregoing reasons, Nationwide's motion for summary judgment, ECF No. 27, is **GRANTED**, and Coulter's motion for summary judgment, ECF No. 26, is **DENIED**.

**IT IS SO ORDERED.**

s/ Margaret B. Seymour
Margaret B. Seymour
Senior United States District Judge

Columbia, South Carolina
June 18, 2013